**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NIAMEH A. TYEHIMBA, | ) | |
| | ) | |
| Plaintiff | ) | Case No. 22-cv-01139 |
| | ) | |
| v. | ) | Judge Mary M. Rowland |
| | ) | Magistrate Judge Sheila M. Finnegan |
| COOK COUNTY D.O.C., | ) | |
| C.O. MS. GONDEK, AND | ) | |
| C.O. MR. LEWIS, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT GONDEK'S MEMORANDUM IN SUPPORT**
**OF HER MOTION FOR SUMMARY JUDGMENT**

Defendant, Officer Ewelina Gondek, ("Ofc. Gondek"), by and through her Special

Assistant State's Attorneys, Jason E. DeVore and Jorie R. Johnson of DeVore Radunsky LLC,

pursuant to Fed. R. Civ. P. 56, and Local Rule 56.1, state as follows:

**TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................................1

STATEMENT OF FACTS ..................................................................................................1

    I.   CCDOC Polices ....................................................................................................3

    II.  Plaintiff at CCDOC .............................................................................................3

        a.  The Blanket Exchange.....................................................................................3

        b.  The Medical Incident.......................................................................................5

LEGAL STANDARD ..........................................................................................................6

ARGUMENT........................................................................................................................7

    I.   Ofc. Gondek's conduct does not constitute a constitutional violation.........................7

        a.  Defendant Ofc. Gondek's use of force was not intentional.............................9

    II.  Defendant Ofc. Gondek did not deny Plaintiff medical care and was at all times objectively reasonable.................................................................................................10

    III.  Defendant Gondek cannot be held liable for state law battery and willful and wanton claims........................................................................................................................15

    IV.  Defendant is entitled to qualified immunity................................................................17

CONCLUSION ...........................................................................................................18

CERTIFICATE OF SERVICE ...................................................................................19

## **TABLE OF AUTHORITIES**

**Cases**

*Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010).........................6,7

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)...................................................7

*Samuelson v. LaPorte Cty. Sch. Corp.*, 52 F.3d 1046, 1051 (7th Cir. 2008).................7

*Horton v. Pobjecky*, 883 F.3d 941, 944 (7th Cir. 2018)..............................................7,16

*Eberts v. Goderstad*, 569 F.3d 757, 767 (7th Cir. 2009)...............................................7

*Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2470 (2015).....................................7,8, 9, 10

*Davis v. Phillips*, 2012 U.S. Dist. LEXIS 35900, at *16, 2012 WL 912857
(C.D. Ill. March 14, 2012)..........................................................................................8,9

*Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989).....................................................8

*Hudson v. McMillian*, 503 U.S. 1, 7 (1992)..................................................................8

*Mosay v. Hoegger*, No. 13-CV-841-WMC, WL 2930975 *1 (W.D. Wis. May 19, 2016)..............8

*Ryan v. Laporte County Jail*, No. 3:19-CV-623-JD-MGG *1 WL 2324631
(N.D. Ind. May 11, 2020)............................................................................................9

*Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003)...................................................9

*Harris v. Ealey*, No. 19-cv-2210, 2021 U.S. Dist. LEXIS 234926, at *13 (N.D. Ill. Dec. 8,
2021)………………………………………………………………………………………9

*Dockery v. Blackburn*, 911 F.3d 458,464 (7th Cir. 2018) ............................................9

*Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004).........................11

*Miranda v. County of Lake*, 900 F.3d 335, 353-54 (7th Cir. 2018)..............................11,12, 13,14

*Bell v. Sheriff of Cook County*, 2018 U.S. Dist. LEXIS 198178, at *11
(N.D. IL, November 21, 2018) ...................................................................................11

*Steele v. Choi, 82 F.3d 175*, 176 (7th Cir. 1996).........................................................11

*McCann v. Ogle County*, 909 F.3d 881, 886 (7th Cir. 2018)........................................12, 13

*Darnell v. Pineiro*, 849 F.3d 17, 36 (2d Cir. 2017).....................................................12

*Martin v. Cnty. of Kendall*, 561 F. Supp. 726, 727 n.4 (N.D. Ill. 1983)………….........................12

*Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982)..................................................12

*Harris v. Cty. of Cook*, 2022 U.S. Dist. LEXIS 24848,*1.............................................13

*Williams v. Ortiz*, 937 F.3d 936, 943 (7th Cir. 2019)....................................................13

*Eagan v. Dempsey*, 987 F.3d 667, 694 (7th Cir. 2021) .................................................14

*Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011)...................................................14

*Dunn v. Manicki*, 2019 U.S. Dist. LEXIS 235976, 2019 WL 11556789, at *3
(N.D. Ill. 2019)...............................................................................................................14

*Johnson v. Taylor*, 2020 U.S. Dist. LEXIS 183598, 2020 WL 5891401, at *4
(N.D. Ill. 2020) …..........................................................................................................14

*Ziarko v. Soo Line R.R. Co.*, 161 Ill.2d 267, 274, 641 N.E.2d 402, 204 Ill. Dec. 178
(1994)...............................................................................................................................15

*Sparks v. Starks*, 367 Ill.App.3d 834, 837, 856 N.E.2d 575, 305 Ill. Dec. 770 (2006)................15

*Gill v. Vill. of Melrose Park*, 35 F. Supp. 3d 956, 967-68 (N.D. Ill. 2014)……...........................16

*Chelios v. Heavener*, 520 F.3d 678, 692 (7th Cir. 2008)................................................16

*Wilson v. City of Chicago*, 758 F.3d 875, 881 (7th Cir. 2014)………………………….......16

*McDowell v. Vill. of Lansing*, 763 F.3d 762, 768 (7th Cir. 2014)..................................16

*Geimer v. Chicago Park Dist.*, 272 Ill.App.3d 629, 650 N.E.2d 585, 208 Ill. Dec. 891
(1st Dist. 1995)..........................................................................................................15,16

*Kapernekas v. Vill. of Stone Park*, No. 17 C 6040, 2019 U.S. Dist. LEXIS 60790, 2019 WL
1543261, at *6 (N.D. Ill. Apr. 9, 2019)........................................................................16

*White v. City of Chicago*, 2023 U.S. Dist. LEXIS 35696, *37-38......................................16

*Petropoulos v. City of Chi.*, 448 F. Supp. 3d 835, 843-44 (N.D. Ill. 2020)....................17

*Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010)...........................16,17

*RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 489 (7th Cir. 2012) ..............16,17

*Sharp Elecs. Corp. v. Metro. Life Ins. Co.,* 578 F.3d 505, 514-15 (7th Cir. 2009).......................17

*Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2078 (2011)....................................17

*Wood v. Moss*, 572 U.S. 744, 757 (2014)....................................................................17

*Auriemma v. Rice*, 910 F.2d 1449, 1465 (7th Cir. 1990)...............................................17

*Triad Associates v. Chicago Housing Authority*, 87 C 5096, 1997 U.S. Dist. LEXIS 4031, at *22,
1997 WL 160744 (N.D. Ill. Mar. 31, 1997)..............................................................17,18

*Forman v. Richmond Police Dept.*, 104 F.3d 950, 957 (7th Cir. 1997)........................18

*Reed v. Palmer*, 906 F.3d 540, 546 (7th Cir. 2018)......................................................18

**Statutes**

Fed. R. Civ. P. 56.................................................................................Preamble Paragraph

Local Rule Fed. R. Civ. P. 56.1...........................................................................Preamble Paragraph

42 U.C.S. §1983.....................................................................................................................1

Fed. R. Civ. P. 56(a)..............................................................................................................6

745 ILCS 10/1-210...............................................................................................................15

745 ILCS 10/2-202...............................................................................................................15

745 ILCS 10/2......................................................................................................................15

745 ILCS 10/9-102 ..............................................................................................................16

28 U.S.C. § 1367(c)(3)………...............................................................................................16

## INTRODUCTION

Plaintiff Niameh A. Tyehimba ("Plaintiff"), was a pretrial detainee at Cook County Department of Corrections (CCDOC). (SOF at ¶2.) Plaintiff brings this suit against Defendants Cook County, Ofc. Gondek and Cook County Correctional Officer Lewis ("Ofc. Lewis"), alleging civil rights violations pursuant to 42 U.C.S. §1983, along with various state law claims.(SOF at Dkt. 49.) Specifically, Plaintiff alleges claims of excessive force , denial of  medical care, a state law claims of battery, and a state law claim of willful and wanton conduct claim against Defendant Ofc. Gondek. Plaintiff alleges a claim of denial of  medical care against Defendant Ofc. Lewis. (*Id.*) Plaintiff filed his original complaint on May 6, 2022 (Dkt. 6.)  Plaintiff filed amended his complaint on June 13, 2023. (Dkt. 42.) Plaintiff filed his second Amend Complaint on July 14, 2023 (Dkt. 49)

Summary judgment should be granted because Defendant is entitled to qualified immunity. Therefore, Defendant Ofc. Gondek respectfully requests that the Court find in her favor because there is no genuine dispute of material fact for the jury to consider.

## STATEMENT OF FACTS

### I.    CCDOC Policies

CCDOC has a detailed policy for medical aid and response to ensure that the individuals in custody (IICs) are provided medical treatment. (SOF Ex. I.) Per CCDOC policy, IICs are

provided medical treatment without unreasonable delay if the need for medical treatment is apparent. (SOF at ¶9). The policy requires that CCDOC Members take appropriate steps to determine if a person is injured and provide initial medical aid in accordance with their training and current certification levels. (SOF at ¶10). This may include arranging for transportation of the person to medical care and should be done for those in need of immediate care and only when the member can safely do so. *Id.* If a sworn member has reason to believe the individual in custody is feigning injury or illness, the member shall contact the appropriate medical service and an immediate on-duty supervisor, who will determine where medical clearance will be obtained prior to booking. (SOF at ¶11). IICs who appear to have a serious medical issue should be transported by ambulance. *Id.*

CCDOC has a policy for Use of Force (SOF at Ex. J.) Per CCDOC policy, Sworn members are obligated to be involved in numerous and varied interactions, and when warranted, may use reasonable force in carrying out such obligations to the public, staff, and individuals detained. (SOF at ¶12). Members are expected to de-escalate and control situations without force when reasonable. *Id.* Force is prohibited when used with malice as punishment in retaliation, out of anger, frustration, or spite or otherwise unbecoming of a sworn, certified, and deputized member. *Id.* Reasonable and sound judgement will dictate the force option to be employed. The t Sheriff's Office examines all uses of force from an objective rather than a subjective standard. *Id.* Given that no policy can realistically predict every possible situation a sworn members might encounter, sworn members are entrusted to use well-reasoned discretion in determining the appropriate use of force in each incident. Sworn members shall use only the force that is objectively reasonable, necessary and proportional to effectively bring an incident under control, while protecting the safety of the sworn member and others and taking into consideration the following factors: (a)

Sworn members are not required to use the same type or amount of force as the individual; (b) A greater level of force may be objectively reasonable and necessary. (SOF at ¶13).

## II.   Plaintiff at CCDOC.

Plaintiff Niameh A. Plaintiff ("Plaintiff") is a resident of Hillsboro, Illinois and is currently an inmate at Graham Correctional Center. (SOF at ¶1). He is a former detainee of Cook County Department of Corrections (hereafter "CCDOC"). *Id.* (SOF at ¶6). During his detainment at CCDOC, Plaintiff was housed in several different divisions and tiers. (SOF at ¶7) From January 12, 2022, to February 12, 2022, Plaintiff was housed in Division 9, Tier 2H in cell 2058 bed number in CCDOC. (SOF at ¶8) During his time at CCDOC, Plaintiff was found guilty of four separate disciplinary violations that included charges of: disorderly conduct; disobeying or resisting orders; threat to staff; disrespect to staff; damage to CCSO property; count violation; misuse of medication; possession of level 2 contraband; and fighting. (SOF at ¶9)

### a.   The Blanket Exchange.

CCDOC is separated into divisions where detainees are housed. (SOF at ¶15) One such division is Division 09, which is further divided into various tiers indicated by a letter a number. *Id.* On February 12, 2022, Ofc. Gondek was assigned to Division 9 Tier 2G, and Ofc. Lewis was assigned to Division 9 Tier 2H. (SOF at ¶16) At approximately 3:43 PM, investigators made entry into Division 9, Tier 2H and searched Cell 2058, which housed Plaintiff, and his cellmate Mr. Hibbler after CCDOC SIU Investigators gathered intelligence that the intended subjects may be in possession of a cigarette lighter. (SOF at ¶17) Both Plaintiff and Hibbler were removed from the cell, searched, and secured in the dayroom while investigators searched Cell 2058. (SOF at ¶17) Investigators recovered a lighter and a discarded electronic monitoring band which Hibbler conceded was his, from the search. (SOF at ¶19) Plaintiff received an inmate disciplinary report for this incident and was found not guilty on February 16, 2022, after hearing before the CCDOC

disciplinary board. (SOF at ¶21)

At approximately 3:58 PM, the laundry department came into Tier 2H to do routine blanket exchange. (SOF at ¶22) At that same time, an Unknown Officer approached Cell 2058 and then proceeded to unlock the chuckhole. (SOF at ¶23 ). Plaintiff's hand can be seen in the chuckhole at this time and seconds later, Plaintiff's arm is hanging out of the chuckhole, when he proceeds to give the Unknown Officer a blanket. (*Id.*) At approximately 4:00:05 PM, the Unknown Officer gives a different blanket to Plaintiff as Ofc. Gondek approaches Cell 2058. (SOF at ¶24) Ofc. Gondek assists putting the blanket through the chuckhole and then closes the chuckhole. (SOF at ¶25) After ensuring Plaintiff's hands are clear of chuckhole and back inside his cell, Ofc. Gondek proceeds to secure it, but Plaintiff resists Ofc. Gondek's efforts to lock up the chuckhole after the blanket exchange was complete. (SOF at ¶26) Ofc. Gondek feels force from Plaintiff pushing back against the chuckhole door as she attempts to secure the chuckhole with the padlock but cannot thread the lock through the second loop on the chuckhole door in order to secure it close. (SOF at ¶ 27) Ofc. Gondek holds the chuckhole with one hand to keep it closed, and with the other hand she places the padlock through the loops of the door. (SOF at ¶28)As Ofc. Gondek struggles to secure the chuckhole door close per CCDOC protocol and procedure, Plaintiff's left pinky finger is mistakenly fractured without her knowledge due to his resistance to having the chuckhole closed. (SOF at ¶29) Ofc. Gondek was never aware that Plaintiff fractured his pinky during the time of the blanket exchange or that an injury occurred during the time of the blanket exchange. (SOF at ¶30)

At approximately 4:00:59 PM, Ofc. Gondek walks away from Cell 2058 and the chuckhole is locked. (SOF at ¶31) At approximately 4:05 PM, the laundry department leaves Tier 2H. (SOF at ¶32) Ofc. Gondek notifies Ofc. Lewis that Plaintiff has requested medical attention after she finishes the laundry exchange on the first floor on Tier 2H as she was assigned to tier 2G. (SOF at ¶33) Before February 12, 2022, Plaintiff did not have any negative interactions with Ofc. Gondek.

4

(SOF at ¶34) Plaintiff's cellmate Hibbler never heard or saw Ofc. Gondek do anything that would suggest she had something against Plaintiff personally in any way. (SOF at ¶35) Ofc. Gondek was not aware that Plaintiff had injured his finger or that his finger was actually fractured until well after the blanket exchange on February 12, 2022. (SOF at ¶36) Hibbler believes Ofc. Gondek was rushing to do her job on February 12, 2022, when securing the chuckhole, and did not smash Plaintiff's finger on purpose, things sometimes just happen. (SOF at ¶37)

**b. The Medical Incident.**

At or around 4:12 PM, Ofc. Lewis let Plaintiff, along with the other detainees on Tier 2H, out into the dayroom. (SOF at ¶ ) At approximately 4:24 PM, Plaintiff approaches the window to the Vestibule Bubble ("Bubble") where Ofc. Lewis was located and tries to communicate with him through the thick glass and dayroom noise. (SOF at ¶42) At approximately 4:31 PM, Ofc. Lewis opens the Bubble door to hear Plaintiff. (SOF at ¶38) Plaintiff stated to Ofc. Lewis that he "needed medical attention." (SOF at ¶41) At approximately 4:33 PM, Plaintiff sways back and forth and at 4:34 PM, Plaintiff lays himself on the ground. (SOF at ¶42) At this time, Ofc. Lewis radios a Sergeant for medical attention. (SOF at ¶ 43) Sergeants, CCDOC Division 09 personnel, and medical staff arrived and attended to Plaintiff, who is given two doses of Narcan. (SOF at ¶44) Plaintiff is transported to St. Anthony's Hospital in an ambulance by Chicago Fire Department. (SOF at ¶45)

On February 12, 2022, Dr. Asma Khatoon diagnoses Plaintiff with a left fifth digit middle phalanx avulsion fracture, provides him with a splint, and opines that his injury typically heals within 4-6 weeks. (SOF at ¶46) On February 23, 2023, Physician Assistant Daniel Kaczrowski examined and treats Plaintiff at a follow up appointment after he was diagnosed with a fracture to left pinky finger. (SOF at ¶47) PA-C Kazcrowski noted in Plaintiff's medical chart that 1.5 weeks ago he was diagnosed with a left 5th digit finger fracture, he has splint, reports no numbness or

tingling, reports no worsening or other injuries, reports he was maintaining the splint, and the injury was progressing in healing as expected. (SOF at ¶48) On February 25, 2022, Nurse Urkay Juett noted in Plaintiff's Medical Chart in her nursing note that he refused ACE wrap for his left hand in the morning. (SOF at ¶49) On July 20, 2022, Dr. Ayesha Khatoon treated Plaintiff at St. Anthony's Hospital, where she notes in his medical chart after her evaluation that he has a normal range of motion of his muscular Skeletor functions. (SOF at ¶50)

Dr. Khatoon further notates that Plaintiff has made no complaints regarding his left pinky at this time. *Id.* On August 23, 2023, Nurse Elizabeth Santos, RN examines and treats Plaintiff at Cermak Health Services. (SOF at ¶51) Nurse Santos notes in Plaintiff's medical chart under the section referral to urgent care and note, that that he was playing basketball 2 days ago and landed on his right hand, and now he is unable to move his right thumb, however he has no problem with his left hand. (SOF at ¶52) On September 20, 2022, Nurse Santos examines and treats Plaintiff again at Cermak Health Services, after a non-emergency health service request form was submitted on the same day. (SOF at ¶53) Nurse Santos notes that Plaintiff has good handgrip, his range of motion was adequate, he was able to feel sensation, and his hand grasp strength in both his hands was normal. (SOF at ¶54) Nurse Santos did not indicate any pain or distress caused by Plaintiff's left hand in his medical chart on this visit. *Id.* Plaintiff never testified or stated in his grievance dated February 13, 2023, with control #202202542, that he requested medical care from Officer Gondek or that Officer Gondek denied him medical care. (SOF at ¶55)

## **LEGAL STANDARD**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of*

*Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court must view all facts and reasonable inferences supported in the record in favor of the nonmoving party. *Samuelson v. LaPorte Cty. Sch. Corp*., 52 F.3d 1046, 1051 (7th Cir. 2008). "Although on summary judgment [courts] generally view the facts in the light most favorable to the nonmovant, in rare circumstances when video footage clearly contradicts the nonmovant's claims, [courts] may consider that video footage without favoring the nonmovant." *Horton v. Pobjecky*, 883 F.3d 941, 944 (7th Cir. 2018). A motion for summary judgment "requires the responding party to come forward with the evidence that it has—it is the 'put up or shut up' moment in a lawsuit." *Eberts v. Goderstad*, 569 F.3d 757, 767 (7th Cir. 2009).

## ARGUMENT

This Court should grant summary judgment in favor of Defendant for the following reasons: (1) the evidence demonstrates the force used by Ofc. Gondek was reasonable under the circumstances; (2) the evidence shows Plaintiff was treated for his injury and Defendant did not deny him access to medical care; (3) state law claims are barred by Illinois tort immunity act, and (4) Defendant is entitled to the defense of qualified immunity.

**I.   Ofc. Gondek's conduct does not constitute a constitutional violation.**

The Fourteenth Amendment Due Process Clause protects a pretrial detainee from the use of excessive force. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2470 (2015). The succeed on this type of claim, Plaintiff must prove the force used was objectively unreasonable. *Id*. at 2473. "Objective unreasonableness turns on the facts and circumstances of each particular case." *Id.* (internal citations omitted). In determining reasonableness, the Court considers "the perspective of a reasonable officer on the scene, including what the officer knew at the time." *Id*. The Court must consider "the legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain

institutional security." *Id.* (internal citations omitted). Moreover, the Court considers "the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* "Officers facing disturbances are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving." *Id*. at 2474 (internal citations removed). "[E]ven an excessive force claim under the Fourteenth Amendment must involve more than de minimis force." *Davis v. Phillips*, 2012 U.S. Dist. LEXIS 35900, at *16, 2012 WL 912857 (C.D. Ill. March 14, 2012) (citing *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989)).

In the context of a DOC, this determination made from the perspective of a reasonable officer on the scene, including what the officer knew at the time, and must account for the "legitimate interests [stemming from the government's] need to manage the facility in which the individual is detained," appropriately deferring to "policies and practices that in th[e] judgment" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security," *Kingsley Id.* at 2468 When prison officials are accused of using excessive force, the core inquiry is "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). If an officer's Taser accidentally goes off, or an officer unintentionally trips and falls on a detainee and causes them harm, the detainee cannot prevail on an excessive force claim. *Kingsley, Id.* at 2472 An excessive force plaintiff must prove that use of force was purposeful and knowing. *Id.*

In *Kingsley*, the plaintiff prevailed on his excessive force claim because the defendant officer tased him after slamming his head into a concrete bunk when he was handcuffed and not resisting. *Id.* at 2476. The court found the defendant's behavior unreasonable given the facts and circumstances at the time of the incident. *Id*. at 2470. In *Mosay v. Hoegger*, the defendant officer was not held liable for accidentally shocking and leaving red marks on the plaintiff detainee

through a remote-controlled shocking device called a "Band-It." No. 13-CV-841-WMC, WL 2930975 *1 (W.D. Wis. May 19, 2016). The officer, who was trained in using the device, accidentally activated the device while monitoring the plaintiff, who was being treated at a hospital. *Id.* at *2. The court found for the defendant on the basis that his behavior and his accidental use of force was not malicious or applied sadistically to cause harm. *Id.* at *5. In *Ryan v. Laporte County Jail*, the plaintiff detainee attempted to sue the jail for accidentally capturing on film when he was nude and occupying the toilet. No. 3:19-CV-623-JD-MGG *1 WL 2324631 (N.D. Ind. May 11, 2020). The court applied the *Kingsley* standard, deciding that "the conduct described by [plaintiff] more closely resembles the accidental firing of a Taser or an unintentional fall than an intentional use of force or a high-speed vehicle chase where it is readily apparent that significant harm is substantially likely to occur." *Id.* At *2. Furthermore, a defendant must be aware that harm is likely to occur from their behavior to assign liability. An officer is not required to use the least amount of force possible to restrain an inmate. Rather, the force must be reasonable under the circumstances. See *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003). *Harris v. Ealey*, No. 19-cv-2210, 2021 U.S. Dist. LEXIS 234926, at *13 (N.D. Ill. Dec. 8, 2021). Officers do not have the luxury of time, and they do not act in an adrenaline- free environment. Officers must make split-second decisions about the use of force in tense, uncertain, and rapidly evolving environments. See *Dockery v. Blackburn, 911 F.3d 458,464 (7th Cir. 2018).*

   a. **Defendant Ofc. Gondek's use of force was not intentional.**

In his excessive force claim, Plaintiff alleges that he placed his left hand outside the chuckhole for blanket exchange. (Dkt. 49 at ¶10.) Ofc. Gondek then approached his cell door and proceeded to close and slam his hand in the chuckhole while an unnamed officer doing laundry tried to help Gondek. (*Id.* ¶13.) Plaintiff testified he then screamed and yelled "Please stop, you are hurting me!" and Ofc. Gondek proceeded to twist and turn his fingers in a painful way. (*Id.* ¶¶

14-15.) Plaintiff then felt Ofc. Gondek snap and break his little finger. (*Id.* ¶16.) Subsequent to the aforementioned injury, Plaintiff's cellmate, Hibbler, told him to remain calm and helped Plaintiff onto his bunk. (*Id.* ¶18.) Some minutes after the aforementioned incident, Plaintiff, and his cell mate were let out for dayroom, where he informed Defendant, Ofc. Lewis, he needed urgent care (*Id.* ¶19.)

At the summary judgment stage, the question is whether a reasonable jury could find a use of force was objectionably unreasonable. More specifically, the question is what a reasonable officer on the scene would have understood in that moment, without the benefit of hindsight. *Kingsley*, 135 S. Ct. *Id.* at 2473. In the case at bar, even viewing all the evidence in the light most favorable to Plaintiff, a reasonable fact finder could not conclude the Defendant's use of force was objectively unreasonable. There is no evidence showing that Defendant Gondek intentionally injured Plaintiff's finger on February 12, 2022. To the contrary, Plaintiff testified during his deposition that before the February 12, 2022, incident, he did not have any negative interactions with Ofc. Gondek. (SOF at ¶34.) Plaintiff's cellmate Hibbler also testified that never heard Ofc. Gondek say or do anything that would suggest she had something against Plaintiff. (SOF at ¶35.) Ofc. Gondek testified that she was not even aware that Plaintiff had incurred an injury from the blanket exchange in the chuckhole until she was informed later on by another staff member. (SOF at ¶36.) Hibbler further stated during his deposition that Ofc. Gondek was probably not paying attention, when Plaintiff relayed that he only received one blanket. (SOF at ¶37.) Hibbler testified that Defendant Gondek likely did not smash Plaintiff's finger on purpose. (*Id.*)

Plaintiff, Hibbler, and Ofc. Gondek's testimony all supports the same corroborating facts that Ofc. Gondek did not purposefully or intentionally injure Plaintiff's finger on February 12, 2022. Applying the *Kingsely* standard here, the conduct described by Plaintiff more closely resembles an unintentional fall or taser rather than an intentional use of force. It is clear in hindsight

that Ofc. Gondek mistakenly caught Plaintiff's finger in the chuckhole door during the blanket exchange and was oblivious in the moment that his hand got caught. Ofc. Gondek was merely following CCDOC protocol when she closed the chuckhole and never intended to injure the plaintiff. Rather, Ofc. Gondek was attempting to do her job and pass out blankets per the jails policy.

Plaintiff admitted he had limited interactions with Defendant and admitted he has had no particular issues with Defendant Ofc. Gondek. There was never any animosity that might trigger an argument of retaliation. On February 12, 2022, Ofc. Gondek merely assisted with a routine blanket exchange, and per CCDOC policy was simply closing the chuckhole door like she had done thousands of times before. . Therefore, Plaintiff's Complaint should be dismissed with prejudice because Plaintiff failed to show Defendant, Ofc. Gondek participated in an unconstitutional conduct.

## II. Defendant Ofc. Gondek did not deny Plaintiff medical care and was at all times objectively reasonable.

To establish a Section 1983 claim, Plaintiff must demonstrate: (i) that he suffered a constitutional violation, and (ii) that he suffered such violation from a person acting under color of state law. *Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004). More specifically, to survive motion for summary judgment on a Fourteenth Amendment due process right to adequate medical care claim, Plaintiff must establish that Defendants: (1) acted purposefully, knowingly, or recklessly when considering the consequences of handling Plaintiff's specific medical case; and (2) the Defendants acted in an objectively unreasonable manner. *Miranda v. County of Lake*, 900 F.3d 335, 353-54 (7th Cir. 2018); *Bell v. Sheriff of Cook County*, 2018 U.S. Dist. LEXIS 198178, at *11 (N.D. IL, November 21, 2018)(Tharp, J.) citing *Miranda*. "[N]ot every instance of poor medical treatment amounts to a federal constitutional violation[.]" *Steele v. Choi*, 82 F.3d 175, 176 (7th Cir. 1996) "A showing of negligence or even gross negligence will not

suffice." *Miranda*, at 353. Courts must focus on the totality of facts and circumstances faced by the individual defendant to "gauge objectively - without regard to any subjective belief held by the individual - whether the response was reasonable." *McCann v. Ogle County*, 909 F.3d 881, 886 (7th Cir. 2018); *Darnell v. Pineiro*, 849 F.3d 17, 36 (2d Cir. 2017) (concluding that "any § 1983 claim for a violation of due process requires proof of a mens rea greater than mere negligence")). Furthermore, liability under Section 1983 must derive from "direct personal responsibility." *Martin v. Cnty. of Kendall*, 561 F. Supp. 726, 727 n.4 (N.D. Ill. 1983) (citing *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982)).

Plaintiff alleges that Ofc. Gondek violated his constitutional rights by failing to provide him with necessary medical attention on February 12, 2022. (Dkt. 49, at pg. 7). Plaintiff claims between 3:30 pm to 4:00 pm in Division 9, Tier 2H, cell 2058, he experienced a traumatic event. (*Id.* ¶9.) Plaintiff alleges that Defendant Gondek snapped and broke his little finger in his cell. (*Id.* ¶16.) Plaintiff further alleges after this event in his cell, some minutes later, he and Hibbler were let out for dayroom. (*Id.* ¶ 19.) Plaintiff states that he told Defendant Lewis what happened and that he needed urgent medical care. (*Id.*) Due to the pain in his broken finger, Plaintiff alleges he began to panic and hyperventilate. (*Id.* ¶25.) Plaintiff claims he then passed out, had a seizure. He was transferred to St. Anthony's further evaluation.

Here, Defendant Ofc. Gondek's actions were not unreasonable and demonstrated the polar opposite of a failure to provide medical care. Ofc. Gondek timely informed her colleague of plaintiff's injury and then helped arrange appropriate medical care at a local hospital.

To begin, it is important to note that Plaintiff never alleged in his complaint, his deposition testimony, nor in the grievance that he submitted regarding the allegations he alleged in this lawsuit dated February 13, 2023, with control #202202542, any specific requests he made to Ofc. Gondek for medical attention. (SOF at ¶55; Dkt. 49.) In a similar vein, Plaintiff has not alleged she denied

him medical attention. (*Id.*) Plaintiff cannot point to a single instance where Ofc. Gondek ignored his request for medical care due to his left pinky finger being broken or because he was feeling very faint, and his vision was distorted. Additionally, Plaintiff cannot point to an instance where Ofc. Gondek delayed his medical treatment with the intent to cause him harm or acted in a manner that violated his Fourteenth Amendment rights. "After *Miranda*, . . . the controlling inquiry for assessing a due process challenge to a pre-trial detainee's medical care proceeds in two steps." See *McCann v. Ogle County*, *Id.* at 886. That two-step process assumes that the claim is about an objectively serious medical condition (which could be considered a third step). *Harris v. Cty. of Cook*, 2022 U.S. Dist. LEXIS 24848,*18. Defendant does not contest that the fracture of a digit is an objectively serious medical condition, therefore only the other two steps remain at issue.

The first step "focuses on the intentionality of the individual defendant's conduct," and asks whether defendants "'acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of [plaintiff's] case.'" *Id.* (quoting *Miranda*, 900 F.3d at 353). The second step is an objective analysis of the reasonableness of the defendant's actions. "This standard requires courts to focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively — without regard to any subjective belief held by the individual — whether the response was reasonable." See *McCann*, 909 F.3d at 886. In applying its objective analysis, the Court must look to the over-all course of treatment, considering whether "medical staff diligently attended" to the plaintiff's needs and whether the plaintiff was "examined . . . regularly and promptly to address his complaints." See *Williams v. Ortiz*, 937 F.3d 936, 943 (7th Cir. 2019). Again, there is no evidence showing that Ofc. Gondek was actually aware that Plaintiff's finger was fractured after the blanket exchange on February 12, 2022. Even Plaintiff's own Cellmate Hibbler stated that Ofc. Gondek likely did not smash Plaintiff's finger on purpose. (SOF at ¶37.)

Furthermore, the record does not support the notion that Defendant acted purposefully, knowingly, or perhaps even recklessly. In addition, The record lacks evidence of any objectively unreasonable conduct. Correctional officers are non-medical personnel, so they are "presumptively 'entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care.'" *Eagan v. Dempsey*, 987 F.3d 667, 694 (7th Cir. 2021) (citation omitted). Indeed, "if a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011); *Miranda,* 900 F.3d at 343 ("When detainees are under the care of medical experts, non-medical jail staff may generally trust the professionals to provide appropriate medical attention."). That said, a detainee can overcome the presumption if he shows that the jail officials "had reason to know that their medical staff were failing to treat or inadequately treating an in-mate." *Id.* at 343; *Dunn v. Manicki*, 2019 U.S. Dist. LEXIS 235976, 2019 WL 11556789, at *3 (N.D. Ill. 2019) ("[Plaintiff] must allege facts sufficient to support an inference that [Defendant] 'knew, or should have known, that [Plaintiff's] condition posed an excessive risk to health or safety' and 'failed to act with reasonable care to mitigate the risk.'") (citing *Miranda*, 900 F.3d at 352-53). In other words, non-medical officials can generally rely on medical personnel, but the non-medical officials "may not  ignore a detainee's request for care." See *Johnson v. Taylor*, 2020 U.S. Dist. LEXIS 183598, 2020 WL 5891401, at *4 (N.D. Ill. 2020).

Plaintiff has failed to show that Ofc. Gondek had "reason to know" that he was not receiving appropriate medical attention. As such, he has failed to meet his burden that officer acted objectively unreasonably. Ofc. Gondek notified the tier officer on duty, Ofc. Lewis, that Plaintiff needed medical attention. (SOF at ¶33.)  Ofc. Lewis spoke with Plaintiff about his request for medical attention shortly after the incident and immediately proceeded to call for medical assistant. Plaintiff was then examined and treated at the hospital on February 12, 2022, and several times

thereafter. (SOF at ¶¶38-54.) There is little doubt Defendant responded in an objectively reasonable manner. Although Plaintiff attempts to argue defendants conduct was intentional or purposeful, there is simply no evidence of it.

Defendant Gondek promptly responded to Plaintiffs medical complaints and nothing in the record shows that any conduct was done with the intention to violate Plaintiff's constitutional rights. By contrast, the record is replete with evidence that Defendant Gondek's conduct was at all times objectively reasonable and done with the purpose of providing Plaintiff with adequate medical care.

### III. Defendant Gondek cannot be held liable for state law battery and willful and wanton claims.

As a threshold matter, Plaintiff asserts a state law battery claim and a state law willful and wanton claim against Defendant Ofc. Gondek. Plaintiff in his pleading comingled all Defendants into one state court claim. However, there is no separate and independent tort of 'willful and wanton conduct. *Ziarko v. Soo Line R.R. Co.*, 161 Ill.2d 267, 274, 641 N.E.2d 402, 204 Ill. Dec. 178 (1994). Instead, it is considered an aggravated form of negligence. *Sparks v. Starks*, 367 Ill.App.3d 834, 837, 856 N.E.2d 575, 305 Ill. Dec. 770 (2006). (745 ILCS 10/1-210) Under Illinois civil law, "battery is the 'unauthorized touching' of another that 'offends a reasonable sense of personal dignity.'" *Gill v. Vill. of Melrose Park*, 35 F. Supp. 3d 956, 967-68 (N.D. Ill. 2014) (quoting *Chelios v. Heavener*, 520 F.3d 678, 692 (7th Cir. 2008). In the case of a public employee, liability attaches only if his conduct was willful and wanton. 745 ILCS 10/2-202. A course of action is considered willful and wanton under the definition as described under Illinois Tort Immunity Act. 745 ILCS 10/2. Under the Act, police officers can only be held liable for action which shows an actual or deliberate intention to cause harm, or when they are utterly indifferent to or consciously disregard the safety of others. See *Wilson v. City of Chicago*, 758 F.3d 875, 881 (7th Cir. 2014) (quoting 745 ILCS 10/1-210); *McDowell v. Vill. of Lansing*, 763 F.3d 762, 768 (7th Cir. 2014) (quoting *Geimer*

*v. Chicago Park Dist.*, 272 Ill.App.3d 629, 650 N.E.2d 585, 208 Ill. Dec. 891 (1st Dist. 1995). Actions that are objectively reasonable cannot be willful and wanton. See *Horton v. Pobjecky*, 883 F.3d 941, 954 (7th Cir. 2018); *Kapernekas v. Vill. of Stone Park*, No. 17 C 6040, 2019 U.S. Dist. LEXIS 60790, 2019 WL 1543261, at *6 (N.D. Ill. Apr. 9, 2019) (gathering cases). In the case of a public employee, liability attaches only if his conduct was willful and wanton. 745 ILCS 10/2-202. As for indemnification, Illinois law provides, "A local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages (and may pay any associated attorney's fees and costs) for which it or an employee while acting within the scope of his employment is liable in the manner provided in this Article." *White v. City of Chicago*, 2023 U.S. Dist. LEXIS 35696, *37-38 (quoting 745 ILCS 10/9-102)

Plaintiff, in the case at bar has failed to state the required elements for a cause of action. Furthermore, Plaintiff has not proffered evidence that Defendant Ofc. Gondek is liable for the state law battery claim against him. Further, as noted, Defendant Ofc. Gondek's conduct in the blanket exchange—including mistakenly catching Plaintiff's finger in the chuckhole, while attempting to secure the door close and then alerting Ofc. Lewis was objectively reasonable. Plaintiff's claims for willful and wanton conduct and battery are based on that conduct. See Dkt. 49. ¶¶ 46-52, 62-70.

Additionally, the state law claims for battery and willful and wanton conduct in Counts III and V should be dismissed because, absent a "federal hook," exercising supplemental jurisdiction over state-law claims would be improper. E.*g., Petropoulos v. City of Chi.*, 448 F. Supp. 3d 835, 843-44 (N.D. Ill. 2020) (citing *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010)). A district court "may decline to exercise supplemental jurisdiction" over state-law claims if the Court has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 489 (7th Cir. 2012).

Although the decision is discretionary, "When all federal claims in a suit in federal court are dismissed before trial, the presumption is that a court will relinquish federal jurisdiction over any supplemental state-law claims." *Al's Serv. Ctr.*, 599 F.3d at 727. This presumption "should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law." *RWJ Mgmt.*, 672 F.3d at 479 (citation and quotation marks omitted). Certain circumstances may impact this presumption. For example, a federal court might keep a case concerning only state law claims if dismissal would create problems under the statute of limitations. *Id.* at 480. A federal court may retain a case if it had already devoted substantial resources to the dispute, or if resolution of the state-law claims is simple. *Id*. See (citing *Sharp Elecs. Corp. v. Metro. Life Ins. Co*., 578 F.3d 505, 514-15 (7th Cir. 2009)). Such is not the case here.

This Court can properly determine that Plaintiff failed in his burden of proof and did not provide compelling evidence to show that Defendant Ofc. Gondek violated Section 1983. Similarly, since Plaintiff does not have a cause of action, this Court should relinquish jurisdiction over any state-law claims based on arguments in this memorandum.

## IV.   Defendant Is Entitled to Qualified Immunity.

Alternatively, Defendant Ofc. Gondek is entitled to the defense of qualified immunity. Qualified immunity shields officials from civil damages liability in the performance of their duties. *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2078 (2011). To defeat qualified immunity, a plaintiff must plead facts showing: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Wood v. Moss*, 572 U.S. 744, 757 (2014). Courts have found when evaluating this two-part analysis that the defendant's intent is relevant to the first prong. See *Auriemma v. Rice*, 910 F.2d 1449, 1465 (7th Cir. 1990); see also *Triad Associates v. Chicago Housing Authority*, 87 C 5096, 1997 U.S.

Dist. LEXIS 4031, at *22, 1997 WL 160744 (N.D. Ill. Mar. 31, 1997) (defendant's state of mind is relevant to determine whether a constitutional violation exists). To overcome qualified immunity, Plaintiff must demonstrate Defendant Ofc. Gondek violated Plaintiff's constitutional rights. See *Forman v. Richmond Police Dept.*, 104 F.3d 950, 957 (7th Cir. 1997) ("[d]oes the alleged conduct set out a constitutional violation").

Here, Plaintiff has not proffered evidence to support facts that establish Defendant Ofc. Gondek's state of mind, intent, or even awareness of any alleged constitutional violations endured by Plaintiff. Plaintiff's Second Amended Complaint contains nothing more than conclusory statements regarding Defendant Gondek's state of mind. Failure to satisfy the first prong entitles Defendant to qualified immunity. See *Reed v. Palmer*, 906 F.3d 540, 546 (7th Cir. 2018) (if plaintiff fails to meet either prong, qualified immunity will apply). Therefore, qualified immunity protects Defendant Ofc. Gondek and Plaintiff's claims against her should be dismissed.

## <u>CONCLUSION</u>

WHEREFORE, for the foregoing reasons, Defendant respectfully request that this Court grant her Motion for Summary Judgment as to all of Plaintiff's claims, along with fees and costs. Defendants also request any other relief the Court deems appropriate and oral argument, if deemed necessary, after briefing has concluded.

**Defendant Officer Gondek**

By:   */s/ Jorie R. Johnson*
Jorie R. Johnson, One of the Attorneys for Defendant

**DEVORE RADUNSKY LLC**
Jason E. DeVore (ARDC # 6242782)
Jorie R. Johnson (ARDC # 6325695)
230 W. Monroe St., Suite 230
Chicago, IL 60606
(312) 300-4479 telephone
jdevore@devoreradunsky.com
jjohnson@devoreradunsky.com

## **CERTIFICATE OF SERVICE**

I, Jorie R. Johnson, hereby certify that I have caused true and correct copies of the above and foregoing to be served on Plaintiff's counsel of record pursuant to ECF, in accordance with the rules of electronic filing of documents on this 22nd day of July 2024.

/s/ *Jorie R. Johnson*
Jorie R. Johnson