IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NIAMEH A. TYEHIMBA, <br><br>Plaintiff, <br><br>v. <br><br>COOK COUNTY, COOK COUNTY CORRECTIONAL OFFICER GONDEK, COOK COUNTY CORRECTIONAL OFFICER K. LEWIS, <br><br>Defendants. | Case No. 22-cv-01139 <br><br>Judge Mary M. Rowland |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Niameh A. Tyehimba brings this suit against Defendants Cook County, Cook County Correctional Officer Gondek ("Gondek"), and Cook County Correctional Officer Lewis ("Lewis") alleging civil rights violations pursuant to 42 U.S.C. §1983, along with various state law claims. Defendants previously filed motions to dismiss Tyehimba's second amended complaint, which the Court granted in part and denied in part. [82]. Before the Court now are Gondek's and Lewis's motions for summary judgment on the remaining claims against them. For the reasons stated below, Gondek's motion for summary judgment [93] is granted in part and denied in part and Lewis's motion for summary judgment [95] is granted in full.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

1

law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. After a "properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id*. at 250 (quoting Fed. R. Civ. P. 56(e)).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id*.

## BACKGROUND[1]

---

[1] The facts in this section are taken from the parties' Rule 56.1 statements and responses and are undisputed unless otherwise noted.

At all times relevant to this litigation, Tyehimba was a pretrial detainee at the Cook County Department of Corrections ("CCDOC"). [94] ¶¶ 1-3. During that same time, Gondek worked at the CCDOC as a correctional officer, and Lewis worked as a correctional sergeant at the CCDOC. [94] ¶ 3; [96] ¶ 3. CCDOC is separated into various numbered divisions which are further divided into various tiers designated by a number and letter. [94] ¶ 16.

On February 12, 2022, Tyehimba was housed in a cell in Division 9 Tier 2H with a cellmate. [94] ¶¶ 16-17 Gondek was assigned to the same division and tier. [94] ¶ 16. At around 3:58 PM, the laundry department entered Tier 2H to perform a routine blanket exchange. [94] ¶ 22. At around 3:59 PM, an unknown officer unlocked Tyehimba's cell's chuckhole, and Tyehimba extended his arm through the chuckhole to give the officer a blanket. [94] ¶ 23. One minute later, the unknown officer provided a new blanket to Tyehimba through the chuckhole. [94] ¶ 24.

The events of the next 54 seconds are disputed.[2] The parties agree that Tyehimba kept his left hand hanging out of the chuckhole because he was expecting another officer, with whom Tyehimba was speaking, to bring him another blanket. [108] ¶ 26. While his left hand was hanging outside of the chuckhole, Gondek approached and shut the chuckhole door on his left hand. [108] ¶ 25. Tyehimba testified that he repeatedly asked Gondek to stop because she was hurting him [108] ¶ 26. Tyehimba and his cellmate testified that Gondek then slammed Tyehimba's hand with the chuckhole door at least two more times. [108] ¶ 26. Gondek then twisted Tyehimba's

---

[2] The parties submitted video footage from a CCDOC security camera that shows the incident, but the camera is positioned such that it does not clarify what occurred.

3

hand and broke one of his fingers. [108] ¶ 25. After realizing she had hurt Tyehimba, Tyehimba testified that Gondek said to him "see what you made me do?" and called him a racist slur. [108] ¶ 25.

In Gondek's telling, she approached the chuckhole to "assist with putting [a] blanket through the chuckhole, and "after ensuring Tyehimba's hands [were] clear of the chuckhole . . . she close[d] the chuckhole door to secure it." [94] ¶¶ 25-26. She then felt "Tyehimba resist her efforts to lock up," and she struggled to, but eventually succeeded in, securing the door. [94] ¶ 27. Gondek testified that she did not hear Tyehimba cry out in pain and did not say anything to him during the incident. [114] ¶ 59. She further testified that she was not aware he broke his finger. [114] ¶ 59.

At around 4:12 PM, Defendant Lewis let Tyehimba and the other detainees on Tier 2H out into the "dayroom," which is a two-tier room that all of the cells in Division 09, Tier 2H feed into. *See* [94] ¶ 38; Gondek Ex. P. Tyehimba testified that when he was let out of his cell, he told Lewis he needed medical attention for his finger. [113] ¶ 32. At 4:24 PM, Tyehimba approached the then-closed window of a vestibule where Lewis was located. [94] ¶ 39. At 4:31 PM, Lewis opened the vestibule window. [94] ¶ 40. Tyehimba testified that he told Lewis that he was feeling faint and dizzy and as if he was going to faint. [113] ¶ 29. Lewis then told Tyehimba he would have to wait until "med pass" arrived before he could receive medical care, which would not be for several hours. [113] ¶ 33. By 4:34 PM, Tyehimba had fallen unconscious and begun

4

convulsing. [114] ¶ 73.³ At this point, Lewis radioed a sergeant to provide medical attention. [94] ¶ 43.

Tyehimba was transported to a nearby hospital in an ambulance. [94] ¶ 45. There, he was diagnosed with a left 5th digit middle phalanx avulsion fracture and given a splint. [94] ¶ 46. One of the doctors who treated Tyehimba testified that that the incident with Gondek contributed to his fainting.⁴ By June of 2022, Tyehimba had a normal range of motion and reported having no complaints with the finger that had been broken. [94] ¶ 50.

## ANALYSIS

### I. Gondek's Motion for Summary Judgment

Gondek has moved for summary judgment on all Tyehimba's remaining claims against her: A Section 1983 claim for excessive force (Count I), a Section 1983 claim for denial of medical care (Count II), an Illinois state law battery claim (Count III), and an Illinois claim for willful and wanton conduct (Count V).

a. Excessive Force (Count I)

As an initial matter, when considering a Section 1983 claim for excessive force, the Court is required to "identify[] the specific constitutional right allegedly infringed." *Graham v. Connor*, 490 U.S. 386, 394 (1989). Although Tyehimba brought his constitutional claims under both the Eighth and Fourteenth Amendments, *see*

---

³ Lewis purports to dispute that Tyehimba was convulsing, *see* [113] ¶ 42, but Lewis testified to that fact in his deposition. Lewis Ex. A. 49:3 – 5 ("Q. Did you notice him convulsing? Is that the word? A. Oh, yes, yes, yes, I did see that."). This fact is thus deemed admitted.

⁴ Gondek purports to dispute this, but the deposition testimony is clear. Gondek Ex. N, 27:21 – 28:2 ("Q . . . In your opinion, was it the stress of this incident with the correctional officer? In your opinion, based on your assessment, was that a contributing cause to the syncope episode? A. Yes.").

[49] ¶¶ 26 – 35, the amendments afford plaintiffs different rights and protections. "The scope of an individual's right to be free from punishment—and, derivatively, the basis for an excessive force action brought under § 1983—hinges on his status within the criminal justice system." *Lewis v. Downey*, 581 F.3d 467, 473 (7th Cir. 2009). The Eighth Amendment protects individuals who have already been convicted "only from cruel and unusual punishment, which is often defined in the prison context as the '"unnecessary and wanton infliction of pain."'" *Id.* (citing *Wilson v. Williams*, 83 F.3d 870, 875 (7th Cir.1996)). But pretrial detainees like Tyehimba have been neither sentenced nor convicted and may not be punished by the state "in any way." *Wilson*, 83 F.3d at 875. The Fourteenth Amendment thus provides a "higher standard [of protection] than that provided by the Eighth Amendment." *Id.* Further, because Tyehimba was a pretrial detainee, Eighth Amendment rights "had not yet vested in him." *See Lewis*, 581 F.3d at 474. Therefore, Tyehimba's excessive force claim can only properly be considered under the Fourteenth Amendment's broader protections.

To succeed on a Fourteenth Amendment excessive force claim, a plaintiff must establish that the force was "objectively unreasonable."[5] *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). In determining whether the force used was unreasonable, courts are to consider "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to

---

[5] Gondek urges that the "the core inquiry [in Tyehimba's excessive force claim] is 'whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" [100] at 8 (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). But *Hudson* reflects the standard for an excessive force claim brought under the Eighth Amendment, not the Fourteenth, and thus says nothing about either party's burden in this action.

6

temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id*.

Gondek argues that reasonable fact finder could not conclude that Gondek's use of force was unreasonable, and that she is thus entitled to summary judgment. The Court does not agree. There is evidence in the record demonstrating that Gondek repeatedly slammed Tyehimba's hand in the chuckhole while Tyehimba begged her to stop. There is evidence in the record further demonstrating that Gondek then twisted Tyehimba's hand in the chuckhole until his finger broke. There is evidence in the record demonstrating that after having broken Tyehimba's finger, Gondek blamed Tyehimba for her attack and called him a racist slur. Gondek makes no effort to address the *Kingsley* factors. She does not explain, for example, what kind of security threat Tyehimba posed while he was in a locked cell waiting for a blanket, or why it was necessary to use *any force*, let alone so much force that she broke a man's finger during what she described a "routine blanket exchange." [100] at 11. Viewing the evidence in the light most favorable to the nonmoving party, it is impossible to find that no reasonable factfinder could find that this use of force was objectively unreasonable.

Gondek also argues that a reasonable factfinder could not find her use of force was "intentional." She compares her actions to those of the defendant in *Hoegger*, where a prison guard *accidentally* activated a device that shocked a prisoner. *Mosay v. Hoegger*, No. 13-CV-841-WMC, 2016 WL 2930975, at *2 (W.D. Wis. May 19, 2016).

7

The court there found that the defendant was entitled to summary judgment on plaintiff's excessive force claim because he could not show that Defendant acted "maliciously and sadistically for the very purpose of causing harm." *Id*. at *4. Notwithstanding that *Hoegger* applied the standard for an Eighth Amendment excessive force claim, even according to Gondek's own statement of facts it is clear she intended to use force to close the chuckhole door *after feeling the resistance from Tyehimba's hand*. *See* [94] ¶¶ 26 – 29. The relevant question is whether Gondek intended use force to commit the act in question, *see Kingsley*, 576 U.S. at 401, and the *undisputed* evidence here clearly shows that she did.

Gondek separately argues that she is protected by the doctrine of qualified immunity. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether a government official is entitled to qualified immunity, a court must answer two questions. "First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." *Pearson v. Hallahan*, 555 U.S. 223, 232 (2009) (cleaned up). "Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id*. (citations omitted).

Gondek's sole argument in support of her qualified immunity defense is that Tyehimba cannot satisfy the first inquiry because he has not proffered evidence

8

showing that Gondek acted with intent. For the reasons discussed above, the Court does not agree. Tyehimba has proffered evidence showing that she intentionally slammed his hand in the chuckhole door of his cell. Gondek is thus not entitled to qualified immunity, and her motion for summary judgment on Tyehimba's excessive force claim is denied.

      b. Denial of Medical Care (Count II)

The Seventh Circuit applies a two-part test when assessing a pretrial detainee's Fourteenth Amendment challenge based on inadequate medical care. *Williams v. Ortiz*, 937 F.3d 936, 942 (7th Cir. 2019). The first part "focuses on the intentionality of [Gondek's] conduct" and asks whether Gondek acted purposefully, knowingly, or recklessly when she "considered the consequences of [her] handling of [Tyehimba's] case." *McCann v. Ogle Cnty., Illinois*, 909 F.3d 881, 886 (7th Cir. 2018) (citing *Miranda v. Cnty. of Lake*, 900 F.3d 335, 353 (7th Cir. 2018)). Neither negligence nor gross negligence is sufficient. *McCann*, 909 F.3d at 886. The second part asks whether, taking into consideration "the totality of facts and circumstances," the challenged conduct was objectively reasonable. *Id*. Gondek argues that there is no evidence in the record upon which a reasonable fact finder could find that Tyehimba can satisfy either part of the test, and that she is thus entitled to summary judgment.

Before turning to the merits of Gondek's motion, the Court must first address the framing of Tyehimba's claim. Although Tyehimba alleges in his complaint a claim for *denial* of medical care, it appears to the Court that the claim is more properly considered as a claim for *delay* of medical care. Tyehimba admits that within 34

9

minutes of Gondek breaking his finger, Defendant Lewis radioed for medical assistance, and shortly thereafter Tyehimba was taken via ambulance to a hospital. Because it is undisputed that Tyehimba was *not* denied medical care, he cannot succeed on a denial of medical care claim. *See McReaken v. Kellerman*, No. 21-CV-00584-SPM, 2024 WL 4298900, at *7 (S.D. Ill. Sept. 26, 2024) ("[Plaintiffs] have taken the liberty of couching their claims a 'denial' of medical care . . . However, in truth, [Plaintiffs] are merely alleging a *delay* of medical care, given that they were seen soon after they requested it.") (emphasis in original). And in cases where a plaintiff alleges a delay in medical care, "courts have required the plaintiff to offer 'verifying medical evidence' that the delay . . . caused some degree of harm." *Id.* (citing *Williams v. Liefer*, 491 F.3d 710, 714-15 (7th Cir. 2007)); *see also Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013) ("No matter how serious a medical condition is, the sufferer from it cannot prove tortious misconduct (including misconduct constituting a constitutional tort) as a result of failure to treat the condition without providing evidence that the failure caused injury or a serious risk of injury.").

Tyehimba has not presented any verifying medical evidence that the 34-minute delay in treatment caused a degree of harm. Instead, Tyehimba has pointed to testimony from the doctor who discharged him, who said that "the stress of the incident" with Gondek contributed to his fainting. She said nothing about whether the delay in treatment contributed to his fainting or to any other degree of harm. Because Tyehimba has pointed to no evidence demonstrating that he suffered any harm as a result of a delay in treatment (or indeed, in any denial of treatment) rather

10

than as a result of the original injury, Gondek is entitled to summary judgment on Count II. *See Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) (affirming summary judgment for prison guards who waited an hour to provide medical care after an inmate was attacked when there was no verifying medical evidence that the inmate suffered any harm as a result of the delay); *Gill v. Sullivan*, No. 19-CV-1405-NJR, 2023 WL 1967469, at *4 (S.D. Ill. Feb. 13, 2023) ("[E]ven if there was a delay in medical care caused by [Defendant] not providing immediate care, there is no evidence in the record to indicate that [Plaintiff] was harmed by the delay.").[6]

c. Battery (Count III) and Willful and Wanton Conduct (Count V)

Under Illinois law, battery requires "(1) an intentional act on the part of the defendant, (2) resulting in offensive contact with the plaintiff's person, and (3) lack of consent to the defendant's conduct." *Obermeier v. Nw. Mem'l Hosp.*, 134 N.E.3d 316, 333-34 (Ill. App. Ct.). The Illinois Local Governmental and Governmental Employees Tort Immunity Act provides that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2–202.[7] Gondek again argues

---

[6] Moreover, Gondek made several arguments about the intentionality of her conduct and why it was not unreasonable to wait 34 minutes to provide medical attention. Tyehimba responded with a single paragraph that does not address Gondek's arguments or cite to case law. [109] at 8-9. "As briefed, the argument is terse, free of legal citation, and vague. It is therefore waived." *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 419 n.2 (7th Cir. 2019); *Williams-Preston v. S. Bend Cmty. Sch. Corp.*, No. 3:20-CV-773 JD, 2023 WL 2074351, at *6 (N.D. Ind. Feb. 17, 2023) ("when a plaintiff makes only a perfunctory argument defending a claim, summary judgment should be granted" in favor of the moving party.).

[7] Gondek appears to argue that willful and wonton is not an independent tort. [100] at 18. ("there is no separate and independent tort of 'willful and wanton conduct.' … it is considered an aggravated form of negligence." She abandons that argument a few sentences later when she describes the elements of willful and wanton conduct. *Id*. The Court rejects it.

11

that she cannot be liable for either claim because her conduct was objectively reasonable and thus not willful and wanton. For the reasons discussed above, the Court does not agree. A reasonable factfinder could determine that Gondek was not acting objectively reasonably when she allegedly slammed Tyehimba's hand in the chuckhole door multiple times.[8] Gondek's motion for summary judgment on Counts III and V is thus denied.

## II. Lewis's Motion for Summary Judgment

### a. Denial of Medical Care Claim (Count II)

Defendant Lewis likewise moved for summary judgment on Count II, which is Tyehimba's only claim against him. Lewis is entitled to summary judgment on Count II, because as with Tyehimba's claim against Gondek, Tyehimba was not denied medical care and has not pointed to any "verifying medical evidence" suggesting that he suffered any additional harm from any delay in treatment. *See Jackson*, 733 F.3d at 790.

Additionally, Tyehimba has not pointed to evidence in the record upon which a jury could find that Lewis acted recklessly, intentionally, or purposefully, rather than with negligence or gross negligence, as is required. *McCann*, 909 F.3d at 886. The undisputed facts show that when Tyehimba told Lewis he was injured, Lewis replied that he would need to wait for "med pass" to arrive in a few hours. Then, when Tyehimba fell to the ground 22 minutes later, the undisputed facts show that Lewis

---

[8] Gonked also argues that Tyehimba's state-law claims should be dismissed if the Court grants summary judgment on Tyehimba's federal claims. Because the Court determines that Gondek is not entitled to summary judgment on Tyehimba's excessive force claim, the Court retains jurisdiction over the state-law claims.

immediately radioed for medical help and Tyehimba was taken to a hospital via an ambulance. Tyehimba does not address Lewis's mental state. Because Tyehimba has not pointed to any evidence sufficient to create a dispute of fact as to Lewis's mental state, Lewis is entitled to summary judgment on Count II and dismissed from the case.[9]

## CONCLUSION

For the stated reasons, Gondek's motion for summary judgment [93] is granted in part and denied in part. Gondek is entitled to summary judgment on Count II, but Counts I, III, and V survive. Lewis's motion for summary judgment [95] is granted in full. The Clerk is directed to enter judgment in Lewis's favor and against Tyehimba.

E N T E R:

Dated: March 6, 2025

MARY M. ROWLAND
United States District Judge

---

[9] Because the Court has determined that Lewis is entitled to summary judgment on other grounds, the Court declines to address Lewis's argument that he is entitled to qualified immunity.

13